Filed 2/29/24  P. v. King CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E082157 |
| v. | (Super. Ct. No. RIF1605365) |
| DION MARTELL KING, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge.

Affirmed.

Dion Martell King, in pro. per.; and Robert L.S. Angres, under appointment by the

Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

1

I.

INTRODUCTION

John Doe C.S., Jane Doe C.S., and John Doe I.D. were standing outside of a liquor store when defendant and appellant, Dion Martell King, shot several rounds at them from the passenger seat of a nearby car. Defendant appeals from a postjudgment order denying his petition for resentencing of his attempted murder convictions (Pen. Code,[1] §§ 664/187, subd. (a); counts 1 & 3) under section 1172.6 (formerly section 1170.95). Appointed counsel has filed a brief under the authority of *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*), requesting this court to conduct an independent review of the record. In addition, defendant has had an opportunity to file a supplemental brief with this court and has done so. We have considered defendant's arguments and affirm the trial court's potsjudgment order summarily denying defendant's section 1172.6 petition. (*Delgadillo*, *supra*, at pp. 231-232.)

II.

FACTUAL AND PROCEDURAL BACKGROUND[2]

John Doe C.S., Jane Doe, and John Doe I.D., who are Hispanic, were socializing by themselves behind a liquor store when they heard gunshots. Jane Doe got down onto the ground and saw flashes from a gun fired from the passenger side of a PT Cruiser. She

---

[1] All future statutory references are to the Penal Code.

[2] The factual background is taken verbatim from defendant's direct appeal following his convictions from case No. E070384. (*People v. King* (Mar. 18, 2020, E070384) [nonpub. opn.] (*King I*).)

heard four or five shots and the sound of bullets hitting the metal poles and trash cans surrounding the group. The PT Cruiser then drove away. No one was injured by a bullet.

A nearby Riverside police officer heard the gunshots, called for back-up, and went to investigate. Upon his arrival, two individuals pointed at a PT Cruiser and yelled, "'That's them!'" The PT Cruiser sped away and the officer began to chase it. The PT Cruiser exceeded 50 mph in 25 mph zones and did not stop at stop signs. The responding officer and other back-up units pursued the PT Cruiser, which eventually stopped. Defendant exited from the passenger side and codefendant Tyrone Norris exited from the driver's side.

When searching the car, the officers recovered five Smith & Wesson .38-caliber rounds and unspent shotgun rounds but did not find a gun. After reviewing dashcam footage, the officers noticed that defendant had thrown something from the car during the chase that sparked as it hit the sidewalk. The officers went to the location where the object was thrown and recovered a Smith & Wesson .38-caliber revolver with spent shell casings.

Video surveillance footage from the liquor store showed that the PT Cruiser was in the parking lot for about three minutes while Norris bought beer. The car left but immediately turned around, went back into the parking lot, and defendant fired shots from about 14 to 22 feet away.[3]

---

[3] The record contains conflicting evidence about exactly how far away from the victim's defendant was when he fired the shots. It is undisputed, however, that he shot at them from a "close range" in a "tight space." (*King I*, *supra*, fn. 2, E070384.)

When interviewed by the officers about the incident, defendant's story changed several times. He first denied firing any shots. Later, he admitted firing the shots, but claimed he did so in self-defense because Hispanic gang members shot at him first. He then claimed the individuals standing outside of the liquor store called him racial slurs and were members of the Eastside Riva, a Hispanic gang that he claimed targeted African-American gang members and had harassed him before. Defendant eventually admitted that he was the only one who had fired shots. Defendant claimed he did so because he believed he was shooting at Eastside Riva gang members who were going to shoot first.

At trial, defendant provided another explanation for why he shot at the victims. According to defendant, on the day of the shooting, he had been confronted by Hispanic gang members who made him feel uncomfortable. After Norris returned to the car from buying beer, he told defendant that Hispanics had said racial slurs and other derogatory remarks to him inside the store. To support Norris and to retaliate for the harassment he suffered earlier in the day, defendant shot into the air to scare the victims.

Defendant was charged with three counts of attempted murder (§§ 664, 187, subd. (a); counts 1, 2 & 3), possession of a firearm by a felon (§ 29800, subd. (a)(1); count 4), and three counts of assault with a firearm (§ 245, subd. (a)(2); counts 5, 6 & 7). As for counts 1 through 3, the People also alleged defendant intentionally discharged a firearm (§§ 12022.53, subd. (c), 1192.7, subd. (c)(8)). As to counts 5 through 7, the People alleged defendant personally used a firearm (§ 12022.5, subd. (a)). The People also

4

alleged defendant had one prior strike conviction (§§ 667, subds. (c), (e), 1170.12, subd. (c)(1)), one serious felony prior conviction (§ 667, subd. (a)), and four prior prison terms (§ 667.5, subd. (b)).

A jury convicted defendant of counts 1, 3, 4, 5, and 7, but found him not guilty of counts 2 and 6, which were related to John Doe C.S.[4] The jury also found true the enhancement allegations relating to the guilty counts. After defendant admitted his prior conviction allegations, defendant was sentenced to 14 years to life plus 25 years in prison. The trial court, however, "permanently stayed" the one-year prison terms imposed for each of defendant's four prison priors under section 1385.

Defendant subsequently appealed. He argued that (1) the trial court impermissibly admitted irrelevant gang evidence, (2) there was insufficient evidence to support his convictions for attempted murder because there was insufficient evidence that he intended to kill the victims, (3) the trial court improperly instructed the jury on the "kill zone" theory of liability for attempted murder, (4) the prosecutor committed misconduct by relying on an improper "kill zone" theory, (5) defense counsel was ineffective, (6) the case should be remanded for resentencing under the newly enacted Senate Bill No. 1393 (2017-2018 Reg. Sess.), (7) the abstract of judgment should be modified to reflect the correct sentence on count 4, and (8) the four one-year enhancements for his prior prison

---

[4] The People conceded that the evidence was inconclusive "in relation to where . . . John Doe C.S. stood." (*King I*, *supra*, fn. 3, E070384.)

5

terms should be stricken under newly enacted Senate Bill No. 136 (2019-2020 Reg. Sess.).  (*King I*, *supra*, E070384.)

We agreed with defendant that the trial court erroneously instructed the jury on the kill zone theory and that the prosecutor improperly argued the theory applied, but concluded any resulting error was harmless.  In addition, we agreed with the parties as to defendant's sixth through eighth contentions but rejected his remaining arguments. Accordingly, we struck the four one-year prior prison term enhancements and remanded the matter for the purpose of allowing the trial court to consider whether to dismiss or strike the section 667, subdivision (a) serious felony enhancement.  We also directed the trial court to correct the sentencing minute order and prepare an amended abstract of judgment to reflect that defendant's sentences on counts 1 and 4 shall run concurrently and that defendant's four one-year enhancements for his prior prison terms were stricken. In all other respects, we affirmed the judgment.  (*King I*, *supra*, E070384.)

Following remand, on April 27, 2021, the trial court struck the five-year prior serious felony conviction and defendant's four one-year prior prison terms.  The court then resentenced defendant to an aggregate indeterminate term of 14 years to life, plus a total determinate term of 20 years.  Defendant again appealed.

After counsel filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738, we affirmed the judgment. (*People v. King* (Nov. 29, 2021, E077027) [nonpub. opn.].)

6

On March 22, 2023, defendant in propria persona filed a petition for resentencing pursuant to former section 1170.95 and requested appointed counsel. The trial court appointed counsel for defendant on May 26, 2023.

A hearing within the meaning of section 1172.6, subdivision (c) was held on September 8, 2023. At that time, the prosecutor requested the court deny defendant's petition, explaining: "[Defendant] was convicted of attempted murder with personal firearms use and gang allegation. There were no instructions given regarding aiding and abetting, felony murder, natural and probable consequences, or any other theory by which malice could be imputed to the defendant." After defense counsel conceded with the prosecutor's statements, the trial court denied defendant's petition because defendant had failed to present a prima facie case for relief. The court noted no "violative instruction" was given in this case, and thus "the court's record of conviction refutes the assertions made by the defendant in his petition for relief, which is that he could not now be convicted under the law as it exists after" Senate Bill No. 775. Defendant timely appealed.

## III.

## DISCUSSION

After defendant appealed, appointed appellate counsel filed a brief under the authority of *Delgadillo*, *supra*, 14 Cal.5th 216, setting forth a statement of the case and a summary of the procedural background. Counsel considered potential issues on appeal but found no specific arguments as grounds for relief, and requested that we exercise our

7

discretion and independently examine the appellate record for any arguable issues. Under *Anders*, which requires "a brief referring to anything in the record that might arguably support the appeal," (*Anders v. California*, *supra*, 386 U.S. at p. 744) counsel raises the issues of whether the trial court prejudicially erred in failing to issue an order to show cause within the meaning of section 1172.6, subdivision (c).

We offered defendant an opportunity to file a personal supplemental brief, and he has done so. Defendant appears to argue the trial court erred in denying his petition and that an order to show cause should have been issued because he did not have the intent or the malice required to be convicted of attempted murder.

"Effective January 1, 2019, the Legislature passed Senate Bill [No.] 1437 [(2017-2018 Reg. Sess.)] 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citation.] In addition to substantively amending sections 188 and 189 . . . , Senate Bill [No.] 1437 added [former] section 1170.95, [now section 1172.6,] which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 959.) In *Lewis*, our Supreme Court held, "[t]he record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Id*. at p. 971.)

8

Under *Delgadillo*, if a no-issues brief is filed in a section 1172.6 appeal and the defendant then "files a supplemental brief or letter, the Court of Appeal is required to evaluate the specific arguments presented in that brief and to issue a written opinion." (*Delgadillo*, *supra*, 14 Cal.5th at p. 232.) We are not required to conduct "an independent review of the entire record to identify unraised issues" but may do so at our discretion. (*Ibid*. ["While it is wholly within the court's discretion, the Court of Appeal is not barred from conducting its own independent review of the record in any individual section 1172.6 appeal."].)

Initially, we note defendant's claim related to his trial are not cognizable in section 1172.6 proceedings. Section 1172.6 is not a vehicle for establishing trial error. Resentencing proceedings under the statute involve "prospective relief from a murder conviction that was presumptively valid at the time," not the correction of "errors in past factfinding." (*People v. Strong* (2022) 13 Cal.5th 698, 713, 714; *People v. Farfan* (2021) 71 Cal.App.5th 942, 947 ["mere filing of a section [1172.6] petition does not afford the petitioner a new opportunity to raise claims of trial error"].) The jury here found that defendant had the intent to commit attempted murder with malice aforethought or the intent to kill.

Moreover, the trial court properly denied defendant's resentencing petition for failure to make a prima facie showing of entitlement to relief under section 1172.6 and did not error in not issuing an order to show cause. It is well settled that section 1172.6 precludes relief as a matter of law where the record of conviction shows a defendant was

9

the sole perpetrator and actual killer. In *Delgadillo*, for example, our Supreme Court determined that the defendant was "not entitled to any relief under section 1172.6" because he "was the actual killer and the only participant in the killing." (*Delgadillo*, *supra*, 14 Cal.5th at p. 233; see also *People v. Garcia* (2022) 82 Cal.App.5th 956, 969 [affirming denial of resentencing because the record of conviction "unequivocally establishes" the defendant was the sole perpetrator and the actual killer]; *People v. Harden* (2022) 81 Cal.App.5th 45, 47-48 [petition for resentencing may be summarily denied when, without factfinding, weighing conflicting evidence, or making credibility determinations, the record of conviction irrefutably establishes as a matter of law that the jury determined the defendant was the actual killer].)

Here, the trial court presumably examined the jury instructions and defendant's record of conviction and determined, without finding facts or relying on our prior appellate opinion, that the jury necessarily found defendant was the actual killer. We have reviewed the jury instructions and verdicts and reach the same conclusion. The jury here was not instructed on aiding and abetting, felony murder, natural and probable consequences, or any other theory by which malice could be imputed to defendant. Defendant admitted to solely shooting at the victims. As the actual killer, defendant is not entitled to relief as a matter of law. (§ 1172.6; *Delgadillo*, *supra*, 14 Cal.5th at p. 233.) To be eligible for relief under section 1172.6, the petitioner must make a prima facie showing that he or she "could not presently be convicted of murder . . . because of changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1172.6, subd.

10

(a)(3).)  The trial court correctly denied defendant's section 1172.6 petition for resentencing.

IV.

DISPOSITION

The trial court's postjudgment order denying defendant's section 1172.6 petition for resentencing is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

MILLER
Acting P. J.

RAPHAEL
J.

11